IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Antonio Williams, )<br>                                )<br>           Plaintiff, )<br>v.                            )<br>                                )<br>Capstone Logistics LLC and )<br>Rogers-Premier Unloading Services, LLC, )<br>                                )<br>           Defendants. )<br>_____ ) | Civil Action No.: 3:19-cv-02374-JMC<br><br><br>**ORDER AND OPINION** |

Plaintiff Antonio Williams filed the instant employment discrimination matter under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; 42 U.S.C. § 1981; and the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), 29 U.S.C. § 1166. Plaintiff alleges, *inter alia*, the above-captioned Defendants[1] discriminated against him based upon his race and constructively discharged him. This matter is before the court on two Motions for Partial Summary Judgment filed by Defendants (ECF Nos. 33, 53), and a Motion for Partial Summary Judgment filed by Plaintiff (ECF No. 35).

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2)(g) D.S.C., the matter was referred to the United States Magistrate Judge for pretrial handling. In December 2020, the Magistrate Judge issued a Report and Recommendation ("Report") in which she recommended the court deny Plaintiff's Partial Motion for Summary Judgment (ECF No. 35) and grant Defendants' Motions for Partial Summary Judgment (ECF Nos. 33, 53). Plaintiff filed Objections to the Report, which are presently before the court. (ECF No. 60.) Defendants filed a Reply to Plaintiff's Objections (ECF No. 61), to which Plaintiff filed a Sur Reply (ECF No. 67).

---

[1] Rogers-Premier Unloading Services, LLC ("Rogers-Premier") employed Plaintiff. Capstone Logistics LLC ("Capstone") acquired Rogers-Premier in November 2018.

1

For the reasons set forth below, the court **ACCEPTS** the Magistrate Judge's Report and adopts the findings therein (ECF No. 59), **GRANTS** Defendants' Motions for Partial Summary Judgment (ECF Nos. 33, 53), and **DENIES** Plaintiff's Motion for Partial Summary Judgment (ECF No. 35). The court further **DENIES AS MOOT** Plaintiff's Motion to Correct a Mistake in His Earlier Declaration.[2] (ECF No. 68.)

## I.     RELEVANT BACKGROUND TO PENDING MOTION[3]

Plaintiff, who is an African American man, unloaded freight from trucks as they arrived at Defendants' warehouse. (ECF No. 59 at 1-2.) As an unloader, Plaintiff would work at various docks at the warehouse—such as the dry dock, cooler dock, or rail dock—and was paid based upon the amount and type of freight he unloaded from the trucks. (*Id.* at 2.) Truck assignments were generally first-come, first-serve based upon the order in which unloaders signed their names to a "sign-up" sheet. (*Id.*) "However, [s]upervisors [could] deviate from that procedure" based upon "the experience or ability of the unloaders," as well as to purportedly ensure "unloaders [we]re paid equitably" to avoid "significant pay disparities." (*Id.* at 3.)

Plaintiff was hired and began working at the dry dock in 2014, "but was reassigned in 2016 to work on the cooler dock." (*Id.* at 3.) Plaintiff asserts his problems began "[i]n August 2018, [when] Alfredo Luna was promoted to lead supervisor of the cooler dock and became [Plaintiff's] supervisor." (*Id.*) Although Luna did not control the number of hours Plaintiff worked, Plaintiff claims that Luna did not give Plaintiff unloading "assignments based on his position on the sign-up list" and "was hostile towards [Plaintiff] based on several incidents in August 2018."[4] (*Id.*)

---

[2] As explained *infra*, the court declines to consider Plaintiff's recently filed declaration. (*See* ECF No. 60-1.)

[3] The Report sets forth the relevant facts and legal standards, which this court adopts and incorporates herein without a full recitation.

[4] Particularly, Plaintiff alleges that Luna once became upset when Plaintiff "took an assignment in Luna's absence." (ECF No. 59 at 3.) In another incident, Luna apparently "got in [Plaintiff's] face

Sometime in late 2018, Plaintiff "was transferred to the rail dock[.]"(*Id.*) "Between February 2019 and [Plaintiff's] resignation from the company in June 2019, [Plaintiff] only occasionally worked on the cooler dock under Luna's supervision." (*Id.* at 3-4.)

Subsequently, Plaintiff brought the instant suit alleging "he was discriminated against based on his race and constructively discharged because Luna gave better truck assignments to Hispanic employees over African[]American employees. [Plaintiff] also claims . . . [D]efendants failed to notify [Plaintiff] of his right to continued health coverage within forty-five days of [Plaintiff's] separation from employment." (*Id.* at 4.)

## II.     JURISDICTION

This court has jurisdiction over Plaintiff's claims via 28 U.S.C. § 1331, as the claims arise under a law of the United States. The court also retains jurisdiction via 42 U.S.C. § 2000e–5(f)(3), which empowers district courts to hear claims "brought under" Title VII.

## III.     LEGAL STANDARD

A.     Report and Recommendation

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976).  The court reviews *de novo* only those portions of a magistrate judge's report and recommendation to which specific objections are filed, and reviews those portions which are not objected to–including those portions to which only "general and conclusory" objections have been made–for clear error. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).  The court may accept, reject, or

---

and told him to work on the dry dock" after a more senior supervisor previously assigned Plaintiff to the cooler dock. (*Id.*)

modify, in whole or in part, the recommendation of the magistrate judge or recommit the matter with instructions. *See* 28 U.S.C. § 636(b)(1).

B. Motion for Summary Judgment

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of material fact for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

When considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under governable law will properly preclude the entry of summary judgment." *Id.* at 248. Further, to show that a genuine issue of material fact exists, the non-moving party must set forth facts beyond "[t]he mere existence of a scintilla of evidence." *Id.* at 252. The non-moving party must present evidence sufficient to demonstrate that a reasonable jury could return a verdict for the non-moving party in order to avoid summary judgment. *See id.* at 248.

### IV.     ANALYSIS

A.     Report and Recommendation

In December 2020, the Magistrate Judge issued the Report suggesting the court grant Defendants' Motions for Partial Summary Judgment (ECF Nos. 33, 53) and deny Plaintiff's Motion for Partial Summary Judgment (ECF No. 35). In the Report, the Magistrate Judge began

with Plaintiff's COBRA claim, finding Defendants were not liable under COBRA "because they [we]re not the administrator of the benefits plan."[5] (ECF No. 59 at 8.) The Magistrate Judge also noted that Plaintiff abandoned his hostile work environment and retaliation claims by failing to respond to Defendants' Motions for Summary Judgment on these issues.[6] (*Id.* at 12 n.9.)

The Magistrate Judge then examined Plaintiff's claims regarding racial discrimination and constructive discharge. (*Id.* at 12.) For race discrimination, the Magistrate Judge applied the *McDonnell-Douglas* framework, explaining this analysis required Plaintiff to demonstrate "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class."[7] (*Id.* at 13 (citing *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010)).)

Applying this framework, the Magistrate Judge concluded Plaintiff could not "establish the fourth element of the *prima facie* test—that Plaintiff was treated differently than similarly situated employees." (ECF No. 59 at 13.) Specifically, the Magistrate Judge asserted that Plaintiff had "not pointed to any evidence that would show he was given assignments that lowered his pay compared to other employees of a difference race . . . . Nor [did Plaintiff] point to evidence . . . show[ing] Luna gave fewer or lower paying truck assignments to him." (*Id.* at 13-14.) "By contrast, . . . [D]efendants . . . produced uncontradicted evidence that [Plaintiff's] pay while Luna was

---

[5] Plaintiff did not object to the Magistrate Judge's findings regarding the COBRA claim.

[6] Plaintiff did not object to the Magistrate Judge's findings that he abandoned these claims.

[7] The court notes that membership in a protected class hinges, *inter alia*, on the particular race of the individual, and not simply whether an individual may be categorized as a minority or non-minority. *See Sanders v. Tikras Tech. Sols. Corp.*, 725 F. App'x 228, 230 (4th Cir. 2018) (observing the plaintiff, an African American woman, claimed discrimination and alleged the replacement for her position of employment, a Hispanic male, was outside of her protected class); *Danial v. Morgan State Univ.*, 426 F. Supp. 3d 135, 144 (D. Md. 2019), *reconsideration denied*, No. CV CCB-17-959, 2020 WL 4016174 (D. Md. July 16, 2020) (noting the plaintiff, a white man, claimed discrimination and alleged the hiring of another candidate—an African American man—was outside of his protected class).

[Plaintiff's] supervisor was similar to other employees regardless of race." (*Id.* at 14 (citation omitted).) Thus, the Magistrate Judge determined Plaintiff's § 1981 and Title VII race discrimination claims should be dismissed. (ECF No. 59 at 14-15.)

Next, the Magistrate Judge found that Plaintiff's constructive discharge claims required dismissal.[8] For the Title VII constructive discharge claim, Plaintiff "failed to exhaust his administrative remedies[.]" (*Id.* at 15.) And for the § 1981 constructive discharge claim, Plaintiff "fail[ed] to forecast evidence to support a reasonable finding of constructive discharge." (*Id.* at 17.) Specifically, the Magistrate Judge explained that Plaintiff had not shown "the elements of causation and intent . . . that the employer, because of . . . [P]laintiff's race, made . . . [P]laintiff's working conditions objectively intolerable such that it induced the plaintiff to quit." (*Id.*) In fact, the Magistrate Judge observed that Plaintiff "put[] forth no admissible evidence that Luna's actions were motivated by [Plaintiff's] race." (*Id.*)

B.     Plaintiff's Objections

Plaintiff filed Objections to the Report in January 2021. (ECF No. 60.) Plaintiff objected to the following factual findings:

- "By contrast, the defendants have produced uncontradicted evidence that Williams's pay while Luna was Williams's supervisor was similar to other employees regardless of race."
- "Specifically, Williams's average pay per truck unloaded on the cooler dock under Luna's supervision, whether alone or split with another employee, actually increased compared to his pay split prior to Luna."
- "Also, Williams's pay per truck unloaded was about average compared to all employees regardless of race, and there does not appear to be any correlation between race and pay."
- "Nor does Williams point to evidence that would show Luna gave fewer or lower paying truck assignments to him."
- "Therefore, supervisors monitor the unloaders' truck assignments over days and weeks to prevent significant pay disparities among the unloaders."
- "In late November or early December 2018, Williams was transferred to the rail dock to accommodate Williams's personal schedule."

---

[8] Plaintiff did not object to the Magistrate Judge's findings regarding his constructive discharge claims.

6

(ECF No. 60 at 7-8 (citing ECF No. 59 at 3, 14) (internal citations omitted).)

To support these objections, Plaintiff offers a "wage chart" that was not admitted into evidence previously and which purportedly compares the weekly wage data of Plaintiff and four of his coworkers. The wage chart was based on information already in the record and offered as evidence to show "the Magistrate[ Judge's] factual findings [we]re incorrect." (ECF No. 67 at 4.) He also provides his own declaration to support his claims. (ECF No. 60-1.) Plaintiff insists the court can consider these materials, despite the fact he failed to include these documents with his Motion during the Magistrate Judge's review. (*Id.* at 2-4, 6-7.) Plaintiff further objects to the Magistrate Judge's findings surrounding his claim for disparate treatment, bringing a combination of rehashed arguments and new arguments based upon his wage chart. (ECF No. 60 at 8-12.) Relatedly, Plaintiff does not object to the finding that Plaintiff abandoned his retaliation and hostile work environment claims, nor offers an excuse for failing to argue these matters; instead, he appears to ignore the Magistrate Judge's findings altogether and simply provides a substantive analysis of these claims. (*Id.* at 13-22.)

C.      The Court's Review

As many of Plaintiff's objections are related to his newly-offered wage chart and declaration, the court begins by examining whether it should consider such evidence. The court then turns to the merits of Plaintiff's Objections.

*(1) Wage Chart and Plaintiff's Declaration*

"When a proper objection is made to a particular issue, 'a district court is required to consider all arguments directed to that issue, regardless of whether they were raised before the [M]agistrate [Judge].'" *Williams v. Bush*, No. 6:17-CV-0735-RMG, 2018 WL 259785, at *1 (D.S.C. Jan. 2, 2018) (quoting *United States v. George*, 971 F.2d 1113, 1118 (4th Cir. 1992)). But

7

"[t]he district court's decision whether to consider additional evidence is committed to its discretion, and any refusal will be reviewed for abuse." *Doe v. Chao*, 306 F.3d 170, 183 & n.9 (4th Cir. 2002). "In appropriate cases, however, the district court may exercise its discretion and accept further evidence when a party offers sufficient reasons for so doing." *Caldwell v. Jackson*, 831 F. Supp. 2d 911, 914 (M.D.N.C. 2010) (citing 12 Wright, Miller & Marcus, Fed. Prac. & Proc. § 3070.2, at 378 (2d ed. 1997) ("The statute and the rule both confirm . . . that the district judge is completely free to supplement the record developed by the [M]agistrate [J]udge with further evidence[.]")).

Here, the court shall consider Plaintiff's newly offered wage chart. The court is not particularly persuaded by Plaintiff's claim that it is only providing the wage chart now because of "the Magistrate[ Judge's] incorrect factual findings." (ECF No. 67 at 4.) However, Plaintiff's other reasons are more legitimate. For instance, Plaintiff emphasizes this chart supports his specific objections regarding whether Plaintiff presented evidence that Luna discriminated against him and caused his wages to decrease. (*Id.* at 4-5.) He likewise claims the chart contains no new evidence, but is in essence simply a new way of compiling and presenting wage data that was already in the record.[9] (*Id.* at 6-7.)

However, the court declines to consider Plaintiff's declaration, which was offered for the first time as part of his Objections. Plaintiff has failed to state sufficient reasons for submitting such evidence for the first time at this stage. In fact, Plaintiff does not provide any reasons for offering this new evidence now, instead only referencing in his briefing that the declaration disputes the Magistrate Judge's finding as to why Plaintiff was transferred away from the cooler

---

[9] Defendants allege Plaintiff submitted new wage data to compile the most recent chart. Plaintiff counters that he created the chart "by inputting the Payroll Check History Reports that the Defendants provided to Plaintiff's Counsel in discovery." (ECF No. 67 at 6-7.) For support he offers the declaration of the paralegal who created the chart. (*See* ECF No. 67-1.)

8

dock. (*Id.* at 6.) Accordingly, the court will consider the wage chart but not Plaintiff's declaration.

### (2) Plaintiff's Specific Objections

Plaintiff lodges objections to six of the Magistrate Judge's findings. The first bundle of objections concerns Plaintiff's pay while being supervised by Luna, including his average pay per truck on the cooler dock. Plaintiff specifically points to his new wage chart to support his claim that the adverse employment action at issue was his decrease in wages under Luna. (ECF No. 60 at 9-10.) He further claims that similarly-situated employees outside of his protected class received more favorable treatment. (*Id.* at 10-11.) Plaintiff insists the issue is not that "Hispanic employees got more loads than him"; rather, "the issue is the wages paid per load." (*Id.* at 11.) Despite this assertion, Plaintiff avers that his "load numbers [we]re significantly less than other employees . . . yet [Plaintiff's] hours were not significantly less so it follows that he was being assigned less work because he worked similar hours." (*Id.*)

In response, Defendants reemphasize that Plaintiff's wages per unload "was (1) similar in value before and after Luna became supervisor of the cooler dock and (2) similar to the wage value of each truck his peers worked, in whole or in part, whether African American or Hispanic." (ECF No. 61 at 7.) Regarding Plaintiff's new wage chart, Defendant contends it "focuses on total wages, not average pay per truck, and therefore does not track [Plaintiff's] stated claim of discrimination." (*Id.*) Defendant also observes that total wages would vary based on the numbers of hours worked and the type of dock each employee worked—information that Plaintiff's chart lacks. (*Id.* at 7-8.) Lastly, Defendant again notes that Luna did not control the number of hours Plaintiff worked. (*Id.* at 7.)

Here, the court overrules Plaintiff's objections because Plaintiff cannot show he was treated differently due to his race. As explained by the Magistrate Judge, Plaintiff's pay per truck on the

9

cooler dock actually increased a few cents after Luna's promotion in August 2018. (ECF No. 59 at 14.) Moreover, the Magistrate Judge directly addressed Plaintiff's claim that Luna withheld unloading assignments, thereby reducing his wages, observing that "[a]lthough [Plaintiff] argues that . . . [D]efendants' pay data does not show whether [Plaintiff] was passed over for assignments by Luna, the burden to forecast such evidence is on [Plaintiff]." (ECF No. 53 at 14.)

Undeterred, Plaintiff now contends that "[e]ven when [Plaintiff] worked the same number of hours in a week he still made less money. For instance, [Plaintiff] worked 42 hours during the weeks of October 12, 2018 and October 19, 2018 yet his wages still declined [as] he was paid $827.10 and $665.31, respectively." (ECF No. 60 at 9.) He further reasons that his

> load numbers are significantly less than the other employees on the Defendants' chart, yet [Plaintiff] hours were not significantly less so it follows that he was being assigned less work because he worked similar hours. Interestingly, the Defendants do not provide data showing the hours worked or the pay. [Plaintiff] has shown that the Hispanic [unloaders] received more favorable treatment because their wages are higher than [Plaintiff] and Dunn and Norris the other Black males who also worked regularly on the [c]ooler dock with him. (Pouto, Torres)[.]

(*Id.* at 11.)

Yet Plaintiff's reliance on the load numbers from Defendants' chart is misplaced. Defendants' chart captures, *inter alia*, loads completed by certain employees on the cooler dock between August 20, 2018, and June 6, 2019. (*See* ECF No. 34-3 at 20.) As noted above, Plaintiff was transferred to the rail dock in early 2019, only intermittently working on the cooler dock thereafter until his resignation in June 2019. Rather than revealing evidence of discrimination, Plaintiff's total cooler dock loads are significantly less than his counterparts because he only worked regularly on that dock for roughly four months. Plaintiff has pointed to no other sufficient evidence to suggest otherwise.

Additionally, Plaintiff's new wage chart offers little support for his contentions. A large

problem with Plaintiff's chart is that it includes *all* wage data for himself and certain of his coworkers in 2018, rather than focusing specifically on activity under Luna's control at the cooler dock. Such problems become apparent when reviewing the wage data underlying Plaintiff's chart, as the data does not evince racial discrimination, despite Plaintiff's insistence to the contrary.[10]

For example, in 2018, Poutou, a Hispanic American, worked 2,420.03 hours and earned $61,463.60 in gross wages. (*See* ECF No. 63 at 6.) Torres, also a Hispanic American, worked slightly more hours (2,525.66) and made significantly less ($54,701.84) in gross wages. (*Id.* at 7.) By contrast, Dunn, an African American, worked significantly less hours than either of his Hispanic American coworkers yet came near Torres' gross wages: 2,102.48 hours of work and $52,898.94 in gross wages. (*Id.* at 5.) Norris, also an African American, worked 2,164.2 hours—which was slightly more than Dunn and significantly less than Poutou and Torres—and made $49,254.47 in gross wages. (*Id.* at 4.) Plaintiff worked the least hours of the above coworkers (2,099.12) and made the least in gross wages ($48,559.80). (*Id.* at 3-8.) Presented differently, the average gross wages per hour of each of the above employees in 2018, in descending order, is as follows: Poutou: $25.40/hour, Dunn: $25.16/hour, Plaintiff: $23.13/hour, Norris: $22.26/hour, and Torres: $21.66/hour. The variance between total hours worked and total wages earned among these individuals—regardless of race—fatally undercuts Plaintiff's insistence that this data demonstrates racial discrimination by Luna on the cooler dock.

Even going further and examining the difference in each employee's average hourly gross wages before and after Luna's promotion does not support Plaintiff's claim of race discrimination. After Luna's promotion, the average hourly gross wage change for each employee is as follows:

---

[10] Plaintiff's chart includes wages and hours worked in 2018 for himself, James Norris, and Desmond Dunn, each of whom are African American; and Valesy Poutou and Alex Torres, both of whom are Hispanic American. Plaintiff states he "regularly worked the [c]ooler [d]ock with" these coworkers. (EF No. 67 at 5 n.1.)

Norris, a seventy-four cent increase (from $22.51 to $23.25); Dunn, a sixty-nine cent decrease (from $25.62 to $24.93); Poutou, a twenty-three cent decrease (from $25.48 to $25.25); Torres, a $2.16 increase (from $20.99 to $23.15); and Plaintiff, a $1.93 decrease (from $23.11 to $21.18).[11] (*See* ECF No. 63 at 3-7.) In other words, the average hourly gross wages for Norris and Torres went up, and the average hourly gross wages for Dunn, Poutou, and Plaintiff went down. Although Torres had the greatest jump in average hourly gross wages, he still earned less on average per hour than Norris and Dunn. Further, Dunn's average hourly gross wages were similar to those of Poutou, while Norris' average hourly gross wages were close to that of Torres'. Likewise, while it is true Plaintiff's average hourly gross wages dropped by nearly two dollars to $21.18 after Luna's promotion, this average overall was still not particularly dissimilar to his coworkers in 2018, as Torres averaged below this figure ($20.99) before Luna's promotion. Such data does not support Plaintiff's assertion that Luna was discriminating against individuals based upon their race while on the cooler dock.[12] These objections are thus overruled.

Plaintiff also objects to the finding that supervisors would intervene with truck assignments "to prevent significant pay disparities among the unloaders." (ECF No. 60 at 7-8 (citation

---

[11] The court arrived at these figures by finding the sum of an employee's gross wages before August 24, 2018, and then dividing this figure by the sum of the employee's total hours worked before August 24, 2018. (*See* ECF No. 63 at 3-7.) The court repeated this calculation for wages earned and hours worked beginning on August 24, 2018, to the end of 2018. (*Id.*) From there, the court subtracted the pre-August 24th figure from the post-August 24th figure to calculate each employee's change in average hourly gross wages after Luna's promotion. (*Id.*) Lastly, the court observes that Luna became the cooler dock's supervisor on August 20, 2018. The court thus picked the next available week of wages data (beginning on August 24, 2018) to make the above calculations.

[12] It appears that Plaintiff's hours worked per week dropped after Luna's promotion: in 2018, Plaintiff worked roughly 45 hours per week before Luna became his supervisor, and approximately 32 hours per week thereafter. (*See* ECF No. 63 at 3.) However, this drop in hours worked would naturally not impact the calculation of wages earned per hour—although it would impact total weekly wages earned, which is the figure presented in Plaintiff's new wages chart. And as noted above, Luna did not control the hours Plaintiff worked.

12

omitted).) However, Plaintiff does not point to any specific evidence to support this purported factual dispute. Indeed, Plaintiff admitted in his deposition that supervisors "will kind of try to split [the work] up" and "make sure that nobody . . . get[s] . . . [higher or lower paying trucks] back to back like that." (ECF No. 34-6 at 86:4-14.) The court therefore overrules this objection.

Further, Plaintiff disputes that he "was transferred to the rail dock to accommodate [his] personal schedule." (ECF No. 60 at 8.) Yet the First Amended Complaint does not allege that Plaintiff was transferred, or that any such transfer was a retaliatory or discriminatory act. The Magistrate Judge correctly concluded this argument was not properly before the court because Plaintiff first raised it in Response to Defendants' Motion for Summary Judgment. (ECF No. 59 at 12 n.10.) Likewise, Plaintiff did not object to the specific finding that the allegation regarding a transfer was not properly before the court, instead seemingly ignoring the Report and arguing his transfer was an adverse action. (*Id.* at 15.) Accordingly, the court finds this argument is without merit.

### (3) Plaintiff's Remaining Contentions

Objections to the findings within the Report must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. *See United States v. Schronce*, 727 F.2d 91, 94 n.4 (4th Cir. 1984). In the absence of specific objections to the findings within the Report, this court is not required to give any explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983).

Here, the court finds Plaintiff's remaining objections are either non-specific, rehash previous arguments that the Magistrate Judge properly considered and addressed, or do not otherwise dispute the findings within the Report. For instance, Plaintiff does not object to the

Magistrate Judge's findings that he abandoned his retaliation and hostile work environment claims in his Objections or Sur Reply, even after Defendants explicitly raised this issue in their Reply. (*See* ECF No. 63 at 12.) Rather, without any explanation or justification, he simply briefs the substance of these claims after failing to do so before the Magistrate Judge. (*See* ECF No. 60 at 13-22.) As Plaintiff failed to lodge any objection to the Magistrate Judge's findings of abandonment, the court declines to consider the substance of these claims. The court finds no clear error on the face of the record and accordingly accepts the Report, adopts the findings therein, and overrules Plaintiff's objections.

## V.     CONCLUSION

For the reasons set forth above, the court **GRANTS** Defendants' Motions for Partial Summary Judgment (ECF No. 33, 53), and **DENIES** Plaintiff's Motion for Partial Summary Judgment (ECF No. 35). The court **ACCEPTS** the Magistrate Judge's Report and Recommendation (ECF No. 59) and incorporates it herein by reference. Lastly, the court **DENIES AS MOOT** Plaintiff's Motion to Correct a Mistake in His Earlier Declaration.[13] (ECF No. 68.)

**IT IS SO ORDERED.**

*J. Michelle Childs*
United States District Judge

March 16, 2021
Columbia, South Carolina

---

[13] As explained *supra*, the court declined to consider Plaintiff's recently filed declaration. (*See* ECF No. 60-1.)